# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Eliga McGhee and Nathaniel McGhee : CIVIL ACTION

v. :

The City of Philadelphia et al. : NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| 2/20/17 | L. Kenneth Chotiner | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215 564 6544 | 215 303 0370 | lkc@theChotinerfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 920 Granite St., Philadelphia PA 19124

Address of Defendant: 1515 Arch St., Philadelphia, PA 19102

Place of Accident, Incident or Transaction: Philadelphia PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☒

Does this case involve multidistrict litigation possibilities? Yes☐ No☒

*RELATED CASE, IF ANY:*

Case Number: ______ Judge ______ Date Terminated: ______

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes☐ No☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes☐ No☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes☐ No☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) ______

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) ______

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, L. Kenneth Chotiner, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 2/20/17 [signature] Attorney-at-Law 77451 Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: 2/20/17 [signature] Attorney-at-Law 77451 Attorney I.D.#

CIV. 609 (5/2012)

JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Elija McGhee, 920 Granite Street, Philadelphia, PA 19124
Nathaniel McGhee, 743 Garland St., Philadelphia, PA 19124

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
L. Kenneth Chotiner, LL.M.
The Chotiner Firm
1818 Market St., Ste. 3620
Philadelphia, PA 19103

## DEFENDANTS

The City of Philadelphia
c/o City Law Department, Civil Rights Unit
1515 Arch St.
Philadelphia, PA 19102

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 1983

Brief description of cause:
Civil Rights-False Arrest/ False Imprisonment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE
02/20/2017

SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NATHANIEL MCGHEE**<br><br>**AND**<br><br>**ELIGA MCGHEE**<br><br>**Plaintiff**<br><br>**Vs.**<br><br>**THE CITY OF PHILADELPHIA,**<br>**OFFICER, JEFFREY WALKER, BADGE No. 3730,**<br>**OFFICER BROWN, BADGE NO. 2962,**<br>**OFFICER NORMAN, BADGE NO. 5214,**<br>**OFFICER JONES, BADGE NO. 7253,**<br>**OFFICER CARLOS BUITRAGO, BADGE NO. 7209,**<br>**OFFICER PASSALACQUA, BADGE NO. 7504,**<br>**OFFICER GALAZKA, BADGE NO. 7481,**<br>**OFFICER CLEAVER, BADGE NO. 2706,**<br>**OFFICER THOMAS LICIARDELLO, BADGE NO. 4383**<br>**OFFICER MICHAEL SPICER, BADGE NO. 5180**<br>**OFFICER BRIAN REYNOLDS, BADGE NO. 4268**<br>**OFFICER PERRY BETTS, BADGE NO. 6761**<br>**OFFICER JOHN SPEISER, BADGE NO. 7169**<br>**OFFICER CHARLSE KAPUSNIAK, BADGE NO. 3465**<br>**OFFICER THOMAS KUHN, BADGE NO. UNKNOWN**<br>**SGT. JOSEPH McCLOSKEY, BADGE NO. 331,**<br>**LT. JACKSON, BADGE NO. UNKNOWN, AND,**<br>**POLICE OFFICERS JOHN DOE NUMBERS 1 THROUGH TEN, BADGE NUMBERS UNKOWN**<br><br>**Defendants** | **CIVIL ACTION**<br><br>**No.: 17-CV-**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

**I. JURISDICTION**

1. This action is brought pursuant to 42 U.S.C. Sections 1983. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(1),(3),(4) and the aforementioned statutory provision. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law.

## II. PARTIES

2. Plaintiff, Nathaniel McGhee, is a resident and citizen of the Commonwealth of Pennsylvania, and at all times relevant to this action was in the Eastern District of Pennsylvania.

3. Plaintiff, Eliga McGhee, is a resident and citizen of the Commonwealth of Pennsylvania, and at all times relevant to this action was in the Eastern District of Pennsylvania.

4. Defendant, City of Philadelphia, is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Philadelphia Police Department, which at all relevant times employed Defendant Officers Walker, Brown, Norman, Jones, Buitrago, Passalacqua, Galazka, Cleaver, Liciardello, Spicer, Reynolds, Betts, Speiser, Kapusniak, Kuhn, McCloskey, Lt. Jackson, and John Doe Numbers 1 through 10 ("the defendant officers").

5. Defendant Officers, Walker, Brown, Norman, Jones, Buitrago, Passalacqua, Galazka, Cleaver, Liciardello, Spicer, Reynolds, Betts, Speiser, Kapusniak, Kuhn, McCloskey, Lt. Jackson, and John Doe Numbers 1 through 10 ("the defendant officers") are police officers for the Philadelphia Police Department acting under the color of state law. The defendant officers were at all times relevant to this Complaint, Police Officers for the City of Philadelphia and acted under the color of state law. They are being sued in both their individual and official capacities.

6. Defendants, John Doe, Number One through Ten, are factitious names of individuals heretofore unascertained.

7. At all relevant times, all defendants were acting in concert and conspiracy and their actions deprived the plaintiffs of thier constitutional and statutory rights.

8. At all times relevant to this Complaint, all defendants acted under color of state law.

## III. FACTS

9. For more than twenty years, Philadelphia police officers assigned to various narcotics units have engaged in a pattern and practice of securing search warrants based on fraud and misrepresentation, the misuse of informants, the improper execution of search warrants, the falsification of evidence, the destruction and theft of personal property, and related misconduct.

10. Not only has the City of Philadelphia has failed to take appropriate remedial measures to prevent misconduct of this nature, it has adopted an official policy that helps foster such misconduct.

11. In January 2009, the Philadelphia Police Department implemented a written policy that requires supervisors to remove from all police paperwork the names of police witnesses who possess exculpatory information. In pertinent part, that policy states:

> Platoon commanders will be required to review and initial all arrest and investigative reports, including PARS reports[1], to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed.
>
> (See Memorandum (09-01)(the "Policy"), §III. A. (1), attached as Exhibit "A.")

The meaning of the phrase "successful outcome" is so obvious that it is not defined further. Id.

12. Pursuant to the Policy, Police supervisors are required to remove from all police paperwork the names of any police officer that witnessed events, which would be useful by a defendant in a criminal case, because such officers would not "ensure" a "successful outcome." In other words, the City of Philadelphia, by and through its Police Department, officially adopted a written policy to enforce a code of silence or "blue code," which prohibits Officers from

---

[1] As the Court may be aware, the arrest and investigative reports, including PARS reports, are the police paperwork that is typically provided to an accused in a criminal case. It is this police paperwork that helps an accused identify, among others, police witnesses.

intervening or providing truthful information against constitutional violations and other unlawful misconduct committed by their fellow Officers.

13. That "successful outcome" means conviction is further evinced by the fact that the Standard Operating Procedures implementing the Memorandum state that "only those officers necessary for prosecution will be subpoenaed to court." (See Exhibit "B.")

14. Philadelphia Police Department, Commissioner Charles Ramsey's implementation of the written policy, just memorialized what had been an unofficial policy and/or custom of the Philadelphia Police Department at the time plaintiff was arrested and before.

15. On July 18, 2007, Plaintiff, Eliga McGhee was in the area of 714 W. Wingohocking Street in the city and county of Philadelphia.

16. Defendants, Officer Liciardello and Lt. Jackson, claim to have been in that area conducting a narcotics investigation.

17. Defendants, Officer Liciardello and Lt. Jackson, claim to have observed Plaintiffs, Eliga and Nathaniel McGhee, come out of the property located at 714 W. Wingohocking Street whereupon two unknown black males approached them.

18. Defendants, Officer Liciardello and Lt. Jackson, claim that the unknown males handed Plaintiff, Nathaniel McGhee, an unknown amount of United States currency and Plaintiff, Eliga McGhee, took unknown items from a pill bottle and handed it to the unknown black males who then left the area.

19. However, plaintiff, Nathaniel McGhee, was not there at the time.

20. Moreover and despite the fact that there were numerous backup officers, those unknown males were inexplicitly not stopped.

21. Defendants, Officer Liciardello and Lt. Jackson, claim that, after the alleged transaction, Plaintiffs, Eliga and Nathaniel McGhee went back inside the property located at 714 W. Wingohocking Street.

22. Defendants, Officer Liciardello and Lt. Jackson, further claim that the next time Plaintiffs, Eliga and Nathaniel McGhee, came out of the house, they were with their father Nathaniel McGhee, Sr. and got into a vehicle and they gave a description to backup officers including Defendants, Officer Reynolds and Officer Walker.

23. However, plaintiff, Nathaniel McGhee, arrived to that location in a van and followed, plaintiff Eliga McGhee, who had got in another vehicle with a female.

24. Plaintiff, Nathaniel McGhee, and his father followed the vehicle plaintiff, Eliga McGhee and the female were in.

25. Backup officers, including Defendants, Officer Reynolds and Officer Walker stopped the vehicles at or about 100 W. Queen Lane, the gas station the McGhees were going to, where they allegedly recovered pills from Plaintiff, Eliga McGhee.

26. However, the defendant officers did not recover the pills from Plaintiff, Eliga McGee.

27. The defendant officers recovered the pills from the female who had a prescription for them.

28. Defendant, Officer Reynolds, claimed that Defendant, Officer Spicer, recovered money from Plaintiff, Nathaniel McGhee.

29. Based upon false allegations, Officer Reynolds, obtained a search warrant for the property located at 714 W. Wingohocking Street.

30. The defendants lied by claiming they recovered from the property located at 714 W. Wingohocking Street ten (10) bags of heroin in the same kitchen cabinet drawer as a kitchen scale.

31. Moreover, the Defendant Officers claimed they recovered from inside the property letters addressed to the plaintiffs that they used for proof of residency.

32. Additionally, the defendant Officers lied about recovering a loaded shotgun from the property.

33. Plaintiffs, Eliga and Nathaniel McGhee, were arrested and charged with selling narcotics.

34. On December 18, 2007, there was a preliminary hearing before the Honorable Jimmie Moore, who held the matter under advisement.

35. On January 7, 2008, the Honorable Jimmie Moore, dismissed the charges against Plaintiff, Nathaniel McGhee, for lack of evidence.

36. On January 30, 2008, the Commonwealth refiled the charges, which were held for court by the Honorable Frank Palumbo on March 5, 2008.

37. On March 30, 2009, the Honorable Chris R. Wogan, granted a Motion to Modify Plaintiff, Nathaniel McGhee's, bail in the underlying criminal case.

38. On April 21, 2008, the Honorable Jimmie Moore, dismissed the charges against Plaintiff, Eliga McGhee, for lack of evidence.

39. On July 8, 2008, the Commonwealth refiled the charges.

40. On October 21, 2008, the Honorable Frank Palumbo, held the matter for court.

41. On April 30, 2009, the Honorable Chris R. Wogan granted Plaintiff, Eliga McGhee's, Motion to Modify Bail in the underlying criminal case.

42. On October 29, 2009, a jury trial began.

43. On November 2, 2009, the Honorable Chris R. Wogan declared a mistrial because Plaintiffs, Eliga and Nathaniel McGhee, offered evidence that the defendant officers were corrupt, and ordered a new trial.

44. Plaintiffs, Eliga and Nathaniel McGhee, filed appeals.

45. On January 6, 2011, the appeals were quashed.

46. On March 24, 2011, Plaintiff, Eliga McGhee, entered a plea of *nolo contendre* and was sentenced to eleven and one half (11.5) to twenty-three (23) months incarceration followed by three years of probation having been in custody to receive time credit for most if not all of the agreed upon sentence.

47. On March 30, 2011, Plaintiff, Nathaniel McGhee, entered a plea of *nolo contendre* and was sentenced to eleven and one half (11.5) to twenty-three (23) months incarceration followed by three years of probation having been in custody to receive time credit for most if not all of the agreed upon sentence.

48. Eventually, on March 6, 2015, the Honorable Sheila Woods-Skipper, granted Plaintiffs, Eliga and Nathaniel McGhee's, PCRA petition and reversed their convictions and the Commonwealth withdrew prosecution.

49. The actions of the defendant officers in submitting materially false information in police paperwork and perjured testimony in court was part of a practice and custom of the defendant officers and other officers in the Philadelphia Police Department to secure the "successful outcome" by ensuring that "only those officers necessary for prosecution will be

subpoenaed" pursuant to an unwritten policy that was memorialized by Memorandum (09-01) and the Standard Operating Procedure implementing that memorandum. This practice and custom was fortified by the written policy that *white-washes* police paperwork. (See Exhibits "A," II. A. 1., and Exhibit "B," III. D.)

50. The defendant officers disregarded proper police practices regarding the use police paperwork and investigations. These actions led to the improper conduct in this case.

51. As a result of the actions and conduct of the defendant officers, the plaintiffs were compelled at considerable expense to retain the services of a criminal defense attorney.

52. The defendant officers, acting in concert and conspiracy, caused the plaintiffs to be unlawfully arrested, subjected to false criminal charges, malicious prosecution and prolonged detention by falsifying information in the search warrant affidavit, failing to disclose to prosecutors the fact that the information provided to the judicial officer in support of the search warrant was false and misleading, fabricating evidence to support the claim that the plaintiff was involved in criminal activity, and failing to disclose other exculpatory evidence regarding these criminal charges.

53. Plaintiffs did not commit any offenses against the laws of the Commonwealth of Pennsylvania, the United States or the City of Philadelphia, or engage in any conduct which justified the actions of all defendants.

54. The unlawful arrest, detention and malicious prosecution in this case were the direct result of all defendants' pattern, practice and custom of subjecting citizens such as the plaintiff to arrest, prosecution and incarceration in the absence of probable cause.

55. The defendant officers acted willfully, deliberately, maliciously or with reckless disregard of the plaintiff's constitutional and statutory rights.

56. As a direct and proximate result of the actions of all defendants, the plaintiffs suffered and continues to suffer physical harms, pain and suffering, some or all of which may be permanent, as well as financial losses.

57. All defendants engaged in the aforesaid conduct for the purpose of violating the plaintiff's constitutional rights by subjecting the plaintiffs to unlawful arrest, malicious prosecution, and prolonged detention.

58. The actions and conduct of the defendant officers were caused by a policy, practice and custom of defendant the City of Philadelphia of failing, with deliberate indifference, to supervise, monitor, and properly train narcotics officers with respect to (a) their duty to provide only truthful information in securing search and arrest warrants, (b) their duty to ensure that relationships and dealings with confidential informants are in accord with Police Department policy and constitutional commands, (c) their duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) their duty to provide accurate and truthful information to the prosecutor's office, (f) their duty to report and disclose misconduct and illegal actions of other police officers, (g) the proper execution of search warrants, and in particular prohibitions on searches that go beyond those authorized by the warrant, and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

59. Defendant the City of Philadelphia has failed to properly discipline the defendant officers and other officers in the Police Department in cases involving violations of rights of civilians, including cases of improper searches, seizures, arrests, and prosecutions, thereby causing the violations in this case.

60. The above described actions of all of the defendants caused the violations of the plaintiff's rights under the Fourth and Fourteenth Amendments as alleged in this Complaint.

**FIRST CAUSE OF ACTION**
**FEDERAL CIVIL RIGHTS VIOLATIONS**

61. The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

62. As a direct and proximate result of all defendants' conduct, committed under color of state law, plaintiffs, Eliga and Nithaniel McGhee, were deprived of the right to be free from unlawful arrest and detention, unlawful search and seizure, malicious prosecution, the right to be secure in ones' person and property and to due process of law. As a result, the plaintiffs suffered and continues to suffer harm in violation of his rights under the laws and Constitution of the United States, in particular the Fourth and Fourteenth Amendments, and 42 U.S.C. § 1983.

63. As a direct and proximate result of the acts of all defendants, the plaintiffs sustained injuries, emotional harm, loss of liberty and financial losses, all to thier detriment and harm.

64. Defendant the City of Philadelphia has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

a. Unlawful detentions and unlawful arrests by police officers;

b. The proper exercise of police powers, including but not limited to the use of false information to obtain search warrants, fabrication of evidence, unlawful arrest, malicious prosecution and unlawful detention;

c. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

d. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

e. Police officers' use of their status as police officers to employ the use of unlawful arrest, or to achieve ends not reasonably related to their police duties;

f. Police officers' use of their status as police officers to employ the use of unlawful arrest, invoke the Code of Silence, or to achieve ends not reasonably related to police duties;

g. The failure of police officers to follow established policies, procedures, directives and instructions regarding the securing of search warrants and the use of arrest powers under such circumstances as presented in this case;

h. The refusal of police officers to intervene when other officers violate the rights of citizens in their presence;

i. The failure to identify and take remedial or disciplinary action against units of officers assigned to narcotics investigations in light of repeated instances of misconduct over a period of many years as alleged in this Complaint; and,

j. The refusal of police officers to report or provide information concerning the misconduct of other police officers, a custom, practice and/or policy known as the "Blue Code of Silence."

65. Defendant the City of Philadelphia failed to properly train, supervise or discipline officers assigned to narcotics units of the Philadelphia Police Department who have engaged over a period of many years in systematic abuses of authority, including but not limited to (a) the duty to provide only truthful information in securing search and arrest warrants, (b) the duty to ensure that relationships and dealings with confidential informants are in accord with Police Department policy and constitutional commands, (c) the duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) the duty to provide accurate and truthful information to the prosecutor's office, (f) the duty to report and disclose misconduct and illegal actions of other police officers, (g) the improper execution of search warrants, and in particularly prohibitions on searches that go beyond those authorized by the warrant, and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

66. Defendant the City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of individuals by other Philadelphia Police Officers, thereby causing and encouraging Philadelphia police, including the defendant officers in this case, to violate the rights of citizens such as plaintiff.

67. Defendant the City of Philadelphia is deliberately indifferent to the need to train, supervise and discipline police officers. The Internal Affairs Division (IAD) of the Philadelphia Police Department (PPD) fails to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

a. There are excessive and chronic delays in resolving disciplinary complaints;

b. There is a lack of consistent, rational and meaningful disciplinary and remedial actions;

c. There is a failure to effectively discipline substantial numbers of officers who were found to have engaged in misconduct.

d. The PPD's internal investigatory process has fallen below accepted practices and is arbitrary and inconsistent;

e. The PPD discipline, as practiced, is incident based rather than progressive. Thus, repeat violators are not being penalized in proportion to the number of violations;

f. The conduct of IAD investigations demonstrates that PPD internal affairs personnel are not adequately trained and supervised in the proper conduct of such investigations;

g. A global analysis of IAD's investigatory procedures indicates a pattern of administrative conduct where the benefit of the doubt is given to the officer rather than the complainant;

h. There are serious deficiencies in the quality of IAD investigations and the validity of the IAD findings and conclusions;

i. The PPD lacks an effective early warning system to identify, track and monitor "problem" officers.

j. Despite the fact that several of the defendant officers had amassed an exceptionally large number of serious misconduct complaints, the officers stayed well below the radar of an early warning system;

k. Despite numerous prior complaints against several of the defendant officers, the PPD took no meaningful disciplinary or remedial actions;

l. Despite numerous prior complaints against several of the defendant officers, the PPD took no meaningful steps to more closely monitor, retrain and supervise the offices;

m. IAD frequently fails to interview available eyewitnesses to incidents involving citizen complaints of misconduct. (In fact, the aforementioned policy helps ensure that IAD is not even aware of all available eyewitnesses.) The interviews that are conducted by IAD are below acceptable standars of police practice and fail to address key issues in the cases; and

n. IAD fails to acknowledge the disproportionate and extreme use of force used by police officers in the investigation of citizen complaints and fails to properly categorize the police officers' misconduct in those cases as an impermissible use of force.

68. Defendants have by the above described actions deprived the plaintiffs of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. §1983.

**SECOND CAUSE OF ACTION**
**SUPPLEMENTAL STATE CLAIMS**

69. The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

70. The acts and conduct of the defendant officers in this cause of action constitute false arrest/false imprisonment, malicious prosecution, assault and battery under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate these claims.

WHEREFORE, plaintiffs respectfully request the following relief:

a. Compensatory damages as to all defendants;

b. Punitive damages as to the individual defendants;

c. Reasonable attorney's fees and costs as to all defendants;

d. Such other declaratory and further relief as appears reasonable and just; and,

e. A jury trial as to each defendant and as to each count.

Dated: February 20, 2017

L. KENNETH CHOTINER, LL.M.
Attorney I.D. No. 77451
THE CHOTINER FIRM
1818 Market Street, Suite 3620
Philadelphia, PA 19103
215.564.6544
Counsel for Plaintiff

PHILADELPHIA POLICE DEPARTMENT

MEMORANDUM (09-01)

(01-28-09)

SUBJECT: OVERTIME MANAGEMENT

I. POLICY

A. Managing overtime costs are an essential element of supervisory and management responsibilities. The underlying goal of these procedures is to use overtime only when necessary; not to impede legitimate policing and investigative work. The following measures for all personnel in the Philadelphia Police Department (PPD) shall be implemented immediately. The purpose of these Department-wide procedures is to achieve uniformity in performance of our public service mission and to provide consistency in determining the need, use, distribution and management of overtime usage and in accordance with Directive 99 – "Overtime Pay and Compensatory Time" and Directive 13 – "Court Notices and Subpoenas."

II. PROCEDURES FOR NON-COURT OVERTIME

A. Following the end of each pay period, the Administrative Service Bureau shall provide an overtime monitoring report to each unit detailing the use of overtime by type. A department summary will be provided to the Police Commissioner.

B. The responsibilities set forth below outline general guidelines and procedures applicable to all police personnel receiving non-court overtime compensation, including but not limited to arrest, investigative and administrative overtime. These guidelines and procedures do not pertain to overtime used for special events or federally-funded task forces, unless otherwise ordered.

C. Staffing should be planned so that most cases require only essential overtime. When significant and recurring overtime is required, other alternatives should be considered such as redistribution of workload, postponement of the work, or the use of temporary help. Overtime pay should not be used as a means to provide supplemental pay to an employee.

D. Personnel members on less than full-duty status are not normally eligible for non-court overtime compensation. Exceptions may be requested through the chain of command for approval by the Deputy Commissioner for Organizational Support Services.



EXHIBIT "A"

2. All reports should clearly articulate the facts and circumstances of each case. Platoon commanders are responsible for ensuring that reports comprehensively capture the exact actions relevant to that case for each personnel member listed, including the supervisor.

B. Supervisors shall ensure that they are directing an investigation appropriately and not placing themselves in a position that will require their testimony at a later date. A supervisor shall, upon receipt of any court notices requesting his/her presence, make this court notice known to his/her Commanding Officer.

C. Assigned investigative supervisors maintain the overall responsibility for case management, including the number of police personnel involved in each case. When feasible, the lead investigator, or co-investigator, will assume responsibility for handing multiple components of each case, including collecting physical evidence, writing property receipts, taking statements, and assuming the role of affiant on the search or arrest warrant. The narrative description included on all search or arrest warrants should match these assigned roles and responsibilities.

D. All court notices, especially Preliminary Hearings, will be reviewed by platoon supervisors to determine whether the subpoenaed member is necessary. Attention should also be paid to the number of personnel subpoenaed for a particular case as well as the number of consecutive days personnel are required to attend the same case.

*1 1. Whenever there appears to be unnecessary personnel requested on a case, the supervisor will contact the Overtime Management Unit (215-685-3674 or 75) to refer the case for their review.

2. Whenever there are six (6) or more personnel subpoenaed on the same case, the supervisor will contact the Overtime Management Unit to refer the case for their review.

E. When police personnel are subpoenaed for court on a Scheduled Day Off (SDO), the platoon supervisor shall initiate an immediate review of the case and arrest paperwork to determine the need for the officer's appearance. If it appears that the officer is unnecessary, the supervisor shall contact the Overtime Management Unit to refer the case for their review.

## IV. COMPLIANCE

A. All personnel who receive overtime compensation shall participate in managing usage in a manner that is consistent with the procedures outlined in this memorandum. Accountability for overtime usage rests with every individual member of the Department.

2. All reports should clearly articulate the facts and circumstances of each case. Platoon commanders are responsible for ensuring that reports comprehensively capture the exact actions relevant to that case for each personnel member listed, including the supervisor.

B. Supervisors shall ensure that they are directing an investigation appropriately and not placing themselves in a position that will require their testimony at a later date. A supervisor shall, upon receipt of any court notices requesting his/her presence, make this court notice known to his/her Commanding Officer.

C. Assigned investigative supervisors maintain the overall responsibility for case management, including the number of police personnel involved in each case. When feasible, the lead investigator, or co-investigator, will assume responsibility for handing multiple components of each case, including collecting physical evidence, writing property receipts, taking statements, and assuming the role of affiant on the search or arrest warrant. The narrative description included on all search or arrest warrants should match these assigned roles and responsibilities.

D. All court notices, especially Preliminary Hearings, will be reviewed by platoon supervisors to determine whether the subpoenaed member is necessary. Attention should also be paid to the number of personnel subpoenaed for a particular case as well as the number of consecutive days personnel are required to attend the same case.

*1 1. Whenever there appears to be unnecessary personnel requested on a case, the supervisor will contact the Overtime Management Unit (215-685-3674 or 75) to refer the case for their review.

2. Whenever there are six (6) or more personnel subpoenaed on the same case, the supervisor will contact the Overtime Management Unit to refer the case for their review.

E. When police personnel are subpoenaed for court on a Scheduled Day Off (SDO), the platoon supervisor shall initiate an immediate review of the case and arrest paperwork to determine the need for the officer's appearance. If it appears that the officer is unnecessary, the supervisor shall contact the Overtime Management Unit to refer the case for their review.

## IV. COMPLIANCE

A. All personnel who receive overtime compensation shall participate in managing usage in a manner that is consistent with the procedures outlined in this memorandum. Accountability for overtime usage rests with every individual member of the Department.

B. This department-wide procedure sets the minimum requirements that all members must follow. Since the functions and responsibilities vary within each unit of the Philadelphia Police Department, bureaus may establish additional standard operating procedures (SOP). Such procedures shall not override the requirements stated here. All such SOPs shall be forwarded to the newly created Division of Standards and Accountability.

C. Unit commanders shall be responsible for the following:

1. Approving overtime requests in accordance with the procedures outlined in this memorandum.

2. Tracking the use of overtime by assigned personnel.

3. Reviewing and monitoring all overtime usage for their respective unit on a monthly basis.

D. The Division of Standards and Accountability, under the Office of Operational Coordination and Accountability shall be charged with the following:

1. Monitoring, analyzing and ensuring compliance with appropriate overtime usage protocols.

2. Reviewing all unit-generated procedures on overtime management and providing corrective feedback to ensure compliance with this document.

3. Identifying, analyzing and determining the appropriateness of individuals earning large amounts of overtime.

4. Attend monthly COMPSTAT sessions for issues concerning overtime usage.

E. Overtime abuses or failures to comply with the above standard operating procedures shall be subject to disciplinary action.

CHARLES H. RAMSEY
Commissioner

| FOOTNOTE # | GENERAL # | DATE SENT | REVISION |
|---|---|---|---|
| *1 | 5671 (bt) 5672 (al) | 01-30-09 | Phone Number Change |

## I. SCOPE

A. The following measures for Field Operations Bureau Personnel shall be implemented immediately in order to meet the fiscal demands of the City of Philadelphia. The purpose of this Department-wide standard operating procedure (SOP) is to achieve uniformity in performance of our public service mission and to provide consistency in determining the need, use, distribution and management of overtime usage.

B. In addition to Directive # 13 - Court Notices and Subpoenas and Memorandum 09-01- Overtime Management, personnel will adhere to the roles and responsibilities contained in this Standard Operating Procedure.

## II. ROLES AND RESPONSIBILITIES

A. Commanders/Managers shall be responsible for approving **Non-Court Overtime** assignments for employees within their respective unit, bureau or division.

i. Commanders/Managers shall be responsible for ensuring that overtime usage is being used appropriately and effectively, and that all employees in their respective units are complying with the following standard operating procedure.

B. Commanders/Managers shall approve all overtime assignments **prior** to overtime being worked by PPD personnel. **Advance authorization** is required for overtime usage, unless exigent public safety and/or emergency conditions exist which necessitate approval after overtime usage has occurred.

C. The following approvals shall be required for all overtime usage:

i. Commanding Officers shall approve all overtime for investigative personnel.

a. The Commanding Officer may give discretion to Platoon Commanders to approve investigative overtime for two (2) hours provided that the investigation does not involve more than two officers.

b. The Commanding Officer must approve all overtime greater than two (2) hours and up to six (6) hours, as well as situations that arise where more than two officers are needed on a particular case.

c. The Divisional Commanders (Inspector) must approve all investigative overtime greater than six (6) hours. There is no exception to these procedures and approval cannot be delegated to supervisory personnel.

D. The **Overtime Authorization Form (75-57)** shall be issued to all employees within each unit, and be completed by the employee requesting overtime.

## III. FIELD OPERATIONS: PATROL, NARCOTICS AND INVESTIGATIVE UNITS PROCEDURES AND GUIDELINES

A. All Court Notices, especially Preliminary Hearings, will be reviewed by supervisory personnel to determine whether the Officers appearance is necessary. All supervisors will be alert to the

EXHIBIT
B

number of Officers/Investigators subpoenaed for a particular case, and be aware of the number of consecutive days an investigator has been subpoenaed.

In those cases where more than **three (3) officers/investigators** are subpoenaed for court on the same case, an immediate review of all investigative reports will be initiated by the Commanding Officer and take action when warranted. As stated in Memorandum 09-01 Overtime Management III-D-2, whenever there are six (6) or more personnel subpoenaed on the same case, the supervisor will contact the overtime management unit to refer the case for their review.

B. As per Memorandum 09-01 Overtime Management, when personnel are subpoenaed for court on a scheduled day off (SDO), the platoon supervisor shall initiate an immediate review of the case and arrest paperwork to determine the need for the Officer's appearance. If it appears that the Officer/Investigator is unnecessary, the supervisor shall contact the Overtime Management Unit to refer the case for their review.

C. Supervisors will not attend court without the approval of the Commanding Officer. Supervisors will ensure they are directing the investigation and not placing themselves in a position that will require their testimony at a later date. It is critical that supervisors fully understand their role, and on those rare occasions when they are needed for court, Commanding Officers' approval will be necessary.

CAN NOT DO.

D. All Investigative Supervisors will be required to review and initial all investigative reports, including PARS reports, and only those officers necessary for prosecution will be subpoenaed to court, as outlined in our departmental policies. **All PARS arrest reports must be reviewed and/approved by a Supervisor within ten (10) hours upon completion of the PARS Arrest Report**

E. The **assigned supervisor** maintains the overall responsibility for the number of police personnel involved in **case management**. When feasible, the lead investigator, or co-investigator, will assume responsibility for handing multiple components of each case, including collecting physical evidence, writing property receipts, taking statements, and assuming the role of affiant on the search or arrest warrant. The narrative description included on all search or arrest warrants should match these assigned roles and responsibilities.

I. Investigative supervisors shall review search and arrest warrants to ensure that the above practices are followed, and that each component of case management is handled by as few police personnel as possible, as needed for the successful prosecution of the case.

II. The assigned investigator or controlling officer will be responsible for conducting the necessary surveillance related to his/her investigation.

III. The assigned investigator will be responsible for preparing all search warrant(s) and/or arrest warrant(s) during a single investigation. Additionally, when feasible, if the investigation necessitates serving search warrants at multiple locations, the assigned investigator will be the affiant on each search warrant. The type and complexity of the investigations controls the number of officers directly involved in subsequent prosecution of the accused. In most cases, the affiant (assigned investigator) should obtain all search and seizure warrants, seize incriminating evidence/fruits of the crime, and prepare necessary property receipts.

iv. The assigned officer/investigator should also be the confiscating officer and prepare necessary property receipts. During the execution of search and seizure warrants, all evidence will be seized by the confiscating officer. Officers participating in the search will not take custody of the evidence, but merely point out to the confiscating officer the location of the found evidence. The confiscating officer will take possession of the evidence and record on a property receipt. Officers will at all times follow proper chain of custody procedures.

v. In most cases the assigned investigator should be responsible for the interview and interrogation of the accused. Formal statements taken from defendants should be limited to the lead investigator or his/her partner.

vi. The assigned investigator will be responsible for conducting all field tests related to their investigations.

vii. The assigned investigator will be responsible for preparing all property receipts (75-3) associated with an investigation. All provisions of Police Directive #91 Property Receipts will be strictly followed.

viii. Supervisors will no longer be listed on the PARS 75-49 as recording or reviewing the departmental "buy" money. This information will instead be listed on the squads sending and receiving sheet. Controlled "buys" made by confidential informants will be witnessed by the lead investigator and/or co-investigator.

ix. The District Attorney's Office during some cases may also subpoena the officer/investigator for testimony relative to the "Report of Field Tester Affidavit" for a preliminary hearing. This is an unnecessary court notice, and the investigative supervisor shall contact the District Attorney's Office directly, and notify him/her that the affidavit serves as a sufficient basis to proceed in a preliminary hearing, without the direct testimony of the field test officer/investigator.

## V. FINAL AUTHORITY AND INTERPRETATION

A. Overtime abuses or failures to comply with the above standard operating procedures may be subject to disciplinary action.